UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CKR LAW LLP f/k/a CRONE KLINE RINDE,
LLP,

                    Petitioner,

              v.

ANDERSON INVESTMENTS
INTERNATIONAL, LLC, PARAMOUNT
SERVICES LLC a/k/a PARAMOUNT SERVICES
LTD., INTECH HOLDINGS (HK) LIMITED a/k/a
INTECH INTERNATIONAL GROUP CO.
LIMITED a/k/a INTECH HOLDINGS INC.,
WHITE ROCK ELECTRONIC TRADING LLC,
BMR CONSULTING, RAVI RACH a/k/a
EDMUND WHITE, GULZHAN NAMAZBAEVA,
and SATYABRATO CHAKRAVARTY,

                  Respondents,

Civil Action No. 1:20-cv-7937

**PETITION TO COMPEL
ARBITRATION**

Petitioner CKR Law LLP f/k/a Crone Kline Rinde, LLP ("Petitioner"), by its undersigned attorneys, hereby petitions this Court for an order, pursuant to 9 U.S.C. § 4, compelling respondents Anderson Investments International, LLC ("Anderson"); Intech Holdings (HK) Limited a/k/a Intech International Group Co. Limited a/k/a Intech Holdings Inc. ("Intech"), White Rock Electronic Trading LLC ("White Rock"), Paramount Services LLC a/k/a Paramount Services Ltd. ("Paramount"), and BMR Consulting ("BMR" and together with Intech, and White Rock, Paramount the "Alter Ego Respondents"); Ravi Rach a/k/a Edmund White ("Rach"), Gulzhan Namazbaeva ("Namazbaeva") and Satyabrato Chakravarty ("Chakravarty" and together with Rach and Namazbaeva the "Individual Respondents" and altogether with Anderson and the Alter Ego Respondents, the "Respondents") to arbitrate all claims and disputes arising from the disputed financial transactions alleged herein, and alleges as follows on the basis of knowledge with respect

to itself and its own actions, and on the basis of knowledge and information and belief as to all other matters:

## <u>NATURE OF THE ACTION</u>

1.      Petitioner is a law firm that undertook the role of escrow agent in a series of financial transactions involving (i) Respondents; (ii) certain non-party intermediaries (as more specifically defined herein, the "Intermediaries"), and (iii) non-party borrowers who were clients of the Intermediaries.

2.      Each of the financial transactions were originated in a similar manner, utilized the same forms of agreements, and provided for the same course of performance. First, an Intermediary reached an agreement in principle for a loan to a borrower-client and the payment into escrow of initial costs and expenses related to the loan. The Intermediary then approached Respondents to secure a commitment for funding. Respondents required payment in advance of amounts for costs and expenses related to funding and agreed to make a schedule of monthly payments to the Intermediaries. The Intermediaries expected to require its borrower-clients to fund the initial costs and expenses and intended the periodic payments from the Respondents to exceed the Intermediary's loan disbursement obligations to the borrower-clients.

3.      Upon reaching an agreement-in-principle, the Intermediary would enter into an Escrow Agreement with its borrower-client and Petitioner for purposes of holding funds in escrow in an escrow account located in New York. The escrowed funds would be released upon the presentation by Respondents of documents evidencing the execution of agreements between Respondents and the Intermediary and issuance and delivery of a bank instrument in connection with the transaction (each a "BI" and altogether, the "BIs"). Upon presentation of the requisite documents, most of the escrowed funds would be released to accounts designated by the

Respondents. A portion of the escrowed funds would be paid to Petitioner as a fee for its role as escrow agent. The Respondents were then obligated to make the agreed upon schedule of payments to the Intermediaries.

4.      Petitioner undertook the role of escrow agent in connection with a series of financial transactions that closed in the manner described above during the period 2015 through 2019. With respect to each of these transactions, escrowed funds were deposited into Petitioner's escrow account in New York and were released only after the Respondents submitted to Petitioner documents meeting the criteria specified in the Escrow Agreements. Upon release, the funds were transferred to accounts located outside the United States designated by the Respondents.

5.      In connection with each transaction, the Respondents knew (i) that the documents they presented to Petitioner, as escrow agent, would result in the release of funds from an escrow account located in New York, (ii) that upon release, the funds would be transferred to accounts owned or controlled by the Respondents outside the United States, and (iii) that each Escrow Agreement included a provision requiring all disputes relating to the transactions be submitted to binding arbitration in New York City.

6.      From time to time, Respondents sent to the Intermediaries and Petitioner statements of account and other documents and communications purporting to show that Respondents were complying with their obligations to the Intermediaries.

7.      Despite Respondents' representations as to their alleged performance, Petitioner has now learned that Respondents breached their obligations to fund the Intermediaries' loan transactions. At all relevant times, Petitioner acted in compliance with its duties and obligations under the Escrow Agreements and without knowledge of wrongful conduct by the Respondents. Yet Respondents' breach of their obligations has caused damage to Petitioner because, *inter alia*,

certain Intermediaries and their borrower-clients have now made claims against Petitioner in connection with the transactions alleging that the Respondents engaged in a fraudulent scheme to convert the Escrow Payments.

8.      Despite substantial good faith efforts, Petitioner has been unable to resolve these disputes by agreement. Accordingly, pursuant to the authority granted to Petitioner in the Escrow Agreements, Petitioner now petitions this Court for an Order compelling the Respondents to submit to arbitration in New York City.

## PARTIES

### Petitioner

9.      Petitioner is a limited liability partnership formed under the laws of the State of California. Petitioner's primary offices are located in New York, New York. Petitioner is authorized to do business in New York State. At all relevant times, Petitioner acted solely in the capacity of an escrow agent and in compliance with the terms of written Escrow Agreements.

### Respondents

10.     Upon information and belief respondent Anderson Investments International, LLC is a Nevis limited liability company with primary offices located in Dubai, Emirate of Dubai, United Arab Emirates. Upon information and belief, at all relevant times, Respondent Anderson was controlled by Respondent Rach.

11.     Upon information and belief, Respondent Intech Holdings (HK) Limited a/k/a Intech International Group Co. a/k/a Limited A/K/A Intech Holdings Inc. is a Hong Kong private company limited by shares with primary offices located in Wan Chai, Hong Kong Special Administrative Region. Upon information and belief, at all relevant times, Respondent Intech was controlled by Satyabrato Chakravarty.

12.     Upon information and belief Respondent Paramount Services LLC a/k/a Paramount Services Ltd. is a Nevis limited liability company with its primary offices in Dubai, Emirate of Dubai, United Arab Emirates. Upon information and belief, at all relevant times, Respondent Anderson was controlled by Respondent Rach.

13.     Upon information and belief, Respondent BMR Consulting is a Dubai limited company with primary offices located in Dubai, Emirate of Dubai, United Arab Emirates. Upon information and belief, at all relevant times, Respondent BMR was controlled by Respondent Rach.

14.     Upon information and belief, Respondent White Rock Electronic Trading LLC is a Dubai limited company with primary offices located in Dubai, Emirate of Dubai, United Arab Emirates. Upon information and belief, at all relevant times, Respondent White Rock was controlled by Respondent Rach.

15.     Upon information and belief, Respondent Ravi Rach a/k/a Edmund White is an individual residing in Dubai, Emirate of Dubai, United Arab Emirates.

16.     Upon information and belief, Respondent Gulzhan Namazbaeva is an individual residing in Dubai, Emirate of Dubai, United Arab Emirates.

17.     Upon information and belief, Respondent Satyabrato Chakravarty is an individual residing in Dubai, Emirate of Dubai, United Arab Emirates.

## <u>JURISDICTION AND VENUE</u>

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Petitioner and the Respondents and the amount in controversy exceeds $75,000 (exclusive of interest and costs).

19.     This Court has personal jurisdiction over the Respondents pursuant to New York CPLR 302(a)(1) and (3).

20.     This Court also has personal jurisdiction over the Respondents because the disputes herein concern matters that, pursuant to the Escrow Agreements, are required to be resolved by arbitration in New York City. Each of the Respondents is either (i) a signatory to an instrument that is an integrated part of the transaction that includes the provision in the Escrow Agreements providing for resolution of disputes in New York or (ii) are otherwise closely related to the instruments providing for resolution of disputes in New York. Respondents therefore consented to and submitted to, or are otherwise estopped from failing to submit to, personal jurisdiction in this District. *See, e.g.*, *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents ... to personal jurisdiction ... within that jurisdiction."); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) ("[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.").

21.     Venue is otherwise proper in this district in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### The Disputed Financial Transactions

22.     Each of the disputed financial transactions were structured in generally the same manner, required generally the same course of performance, and involved generally the same form of agreements: An Escrow Agreement (each an "Escrow Agreement" and altogether the "Escrow Agreements"), a Private Contract Agreement for Lease of Bank Instrument (each a "PCA" and

together the "PCAs"), and a Joint Participation Agreement (each a "JPA" and together the "JPAs"). No transaction could proceed without all three agreements and, therefore, the Escrow Agreement together with the corresponding PCA and JPA formed one integrated transaction.

23.     Pursuant to each Escrow Agreement, the Intermediary and its borrower-client engaged Petitioner in the limited capacity of an escrow agent for purposes of holding funds (the "Escrow Funds") intended to be disbursed to a Respondent for purposes of paying initial costs and expenses related to the transactions (the "Escrow Payments").

24.     Pursuant to each PCA, an Intermediary agreed to arrange for the payment of funds for the delivery of a BI to an account designated by the Anderson who was party to the PCA. The Anderson agreed to use the BI as a credit enhancement or otherwise, to raise cash in order to fund investment activities under the control and direction of the Anderson and that would be the subject of the JPA.

25.     Pursuant to each JPA, the Anderson agreed to (i) use the cash raised from the PCA to fund investment activities under the control or direction of one or more of the Respondents; (ii) granted to the Intermediary participation rights in the proceeds from the Respondents' investment activities; and (iii) make, in satisfaction of the Intermediaries participation rights, a series of payment in accordance with an agreed upon schedule (such payments, the "Participation Payments").

26.     During the period 2015 through 2019, Petitioner was engaged to act in the capacity of an escrow agent in connection with a series of financial transactions structured as described above. More specifically, the financial transactions that are the subject of this petition are as follows:

      a.   <u>November 20, 2015</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in

New York to account held in the name of BMR Consulting; JPA signed by
Respondent Namazbaeva on behalf of Anderson providing for delivery of assets
into account held by Paramount; JPA and PCA submitted by Individual
Respondents to Petitioner for purpose of triggering release of Escrow Payments in
accordance with terms of Escrow Agreement engaging Petitioner as escrow agent;

b.   December 8, 2017: PCA signed by Respondent Namazbaeva on behalf of Anderson
and providing for transfer of funds from Petitioner's escrow account in New York
to account held in the name of BMR Consulting; JPA signed by Respondent
Namazbaeva on behalf of Anderson providing for delivery of assets to account held
in the name of Intech; JPA and PCA submitted by Individual Respondents to
Petitioner for purpose of triggering release of Escrow Payments in accordance with
terms of Escrow Agreement engaging Petitioner as escrow agent;

c.   April 5, 2018: PCA signed by Respondent Namazbaeva on behalf of Anderson and
providing for transfer of funds from Petitioner's escrow account in New York to
account held in the name of BMR Consulting; JPA signed by Respondent
Namazbaeva on behalf of Anderson providing for delivery of assets to account held
in the name of Intech; JPA and PCA submitted by Individual Respondents to
Petitioner for purpose of triggering release of Escrow Payments in accordance with
terms of Escrow Agreement engaging Petitioner as escrow agent;

d.   August 21, 2018: PCA signed by Respondent Namazbaeva on behalf of Anderson
and providing for transfer of funds from Petitioner's escrow account in New York
to account held in the name of BMR Consulting; JPA signed by Respondent
Namazbaeva on behalf of Anderson providing for delivery of assets to account held
in the name of Intech; JPA and PCA submitted by Individual Respondents to
Petitioner for purpose of triggering release of Escrow Payments in accordance with
terms of Escrow Agreement engaging Petitioner as escrow agent;

e.   March 23, 2019: PCA signed by Respondent Namazbaeva on behalf of Anderson
and providing for transfer of funds from Petitioner's escrow account in New York
to account held in the name of BMR Consulting; JPA signed by Respondent
Namazbaeva on behalf of Anderson providing for delivery of assets to account held
in the name of Intech; JPA and PCA submitted by Individual Respondents to
Petitioner for purpose of triggering release of Escrow Payments in accordance with
terms of Escrow Agreement engaging Petitioner as escrow agent;

f.   April 8, 2019: PCA signed by Respondent Namazbaeva on behalf of Anderson and
providing for transfer of funds from Petitioner's escrow account in New York to
account held in the name of BMR Consulting; JPA signed by Respondent
Namazbaeva on behalf of Anderson providing for delivery of assets to account held
in the name of Intech; JPA and PCA submitted by Individual Respondents to
Petitioner for purpose of triggering release of Escrow Payments in accordance with
terms of Escrow Agreement engaging Petitioner as escrow agent;

    g.  <u>May 31, 2019</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in New York to account held in the name of BMR Consulting; JPA signed by Respondent Namazbaeva on behalf of Anderson providing for delivery of assets to account held in the name of Intech; JPA and PCA submitted by Individual Respondents to Petitioner for purpose of triggering release of Escrow Payments in accordance with terms of Escrow Agreement engaging Petitioner as escrow agent;

    h.  <u>July 21, 2019</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in New York to account held in the name of BMR Consulting; JPA signed by Respondent Namazbaeva on behalf of Anderson providing for delivery of assets to account held in the name of Intech; JPA and PCA submitted by Individual Respondents to Petitioner for purpose of triggering release of Escrow Payments in accordance with terms of Escrow Agreement engaging Petitioner as escrow agent;

    i.  <u>October 3, 2019</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in New York to account held in the name of White Rock; JPA signed by Respondent Namazbaeva on behalf of Anderson providing for delivery of assets to account held in the name of Intech; JPA and PCA submitted by Individual Respondents to Petitioner for purpose of triggering release of Escrow Payments in accordance with terms of Escrow Agreement engaging Petitioner as escrow agent;

    j.  <u>October 25, 2019</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in New York to account held in the name of White Rock; JPA signed by Respondent Namazbaeva on behalf of Anderson providing for delivery of assets to account held in the name of Intech; JPA and PCA submitted by Individual Respondents to Petitioner for purpose of triggering release of Escrow Payments in accordance with terms of Escrow Agreement engaging Petitioner as escrow agent;

    k.  <u>December 14, 2019</u>: PCA signed by Respondent Namazbaeva on behalf of Anderson and providing for transfer of funds from Petitioner's escrow account in New York to account held in the name of White Rock; JPA signed by Respondent Namazbaeva on behalf of Anderson providing for delivery of assets to account held in the name of Intech; JPA and PCA submitted by Individual Respondents to Petitioner for purpose of triggering release of Escrow Payments in accordance with terms of Escrow Agreement engaging Petitioner as escrow agent.

(the "Disputed Financial Transactions")

    27.    In connection with each transaction, each of the Respondents knew (i) the terms of each Escrow Agreement, PCA, and JPA, including the arbitration provisions in the Escrow Agreement; (ii) that each transaction required the execution of all three instruments, *i.e.*, one each

of a JPA, a PCA, and an Escrow Agreement, which altogether comprised an integrated transaction; and (iii) that the Respondents would receive a portion of the Escrow Payment upon presentation to Petitioner of the executed JPAs and PCAs and other documents specified in the Escrow Agreements.

**Respondents Received Direct Benefits from the Escrow Agreements**

28.     In connection with each of the Disputed Financial Transactions, Petitioner received Escrow Funds in its escrow account located in New York, pursuant to the terms of duly executed Escrow Agreements as identified herein.

29.     Pursuant to the terms of the Escrow Agreements, Petitioner was directed to release the Escrow Payments to one or more of the Respondents upon receipt of documents specified in paragraph 4(a) of the Escrow Agreement.

30.     Paragraph 4(a) of the Escrow Agreement dated March 19, 2018 is typical and provided for the following conditions for release of the Escrow Payment: (i) presentation to the escrow agent of a copy of a SWIFT MT760 with "answer back" confirming the issuance of a BI; and (ii) confirmation of an agreement between the Intermediary and a "third-party" providing for payments sufficient to pay the loan disbursements (altogether, the foregoing documents are referred to as the "Para. 4(a) Documents").

31.     Each of the Respondents knew of the foregoing terms of the Escrow Agreements before entering into the transactions, and knew, understood and expected that Anderson would be the "third-party" referenced in paragraph 4(a) of the Escrow Agreement.

32.     In connection with each of the Disputed Financial Transactions that are the subject of this proceeding, the Individual Respondents transmitted to Petitioner documents that met the criteria set forth in Para. 4(a) Documents, including JPAs and PCAs executed by the Respondents.

33.     The Respondents executed JPAs and PCAs with the specific intent of presenting them, along with the other Para. 4(a) Documents, to Petitioner in order to trigger release of the Escrow Payments to the Respondents.

34.     In Section 5 of the Escrow Agreements, the parties authorized Petitioner to rely on the statements and documents provided to Petitioner by the other parties without the need to obtain further confirmation or other due diligence. In connection with each of the Disputed Financial Transactions, the Respondents knew, understood, and expected that Petitioner would be relying on the accuracy and genuineness of the Para. 4(a) Documents submitted by Respondents.

35.     Petitioner relied in good faith upon the genuineness of the Para. 4(a) Documents it received from the Respondents when releasing the Escrow Payments as required in the Escrow Agreements. All of the funds release from escrow to the Respondents were transferred to accounts located outside the United States in accordance with the instructions provided by the Respondents.

36.     Release of the Escrow Payments satisfied Petitioner's obligations under the Escrow Agreement.

37.     Each release of an Escrow Payment constituted a direct benefit to the Respondents because those funds were released into the possession of the Respondents and, on information and belief, the funds or proceeds therefrom remain in the possession of or were otherwise used for the benefit of the Respondents.

**Petitioner Has Been Damaged by Respondents' Failure
to Comply With Their Obligations under the JPAs**

38.     Upon information and belief, the Respondents generated profits, revenues, monies, or otherwise derived valuable benefits from the Escrow Payments they received in connection with the Disputed Financial Transactions.

39.     From time to time during the period 2015 to 2019, Respondents sent to the Intermediaries and Petitioner statements of accounts and other documents and records purporting to show that the Respondents were complying with their obligations under the PCAs and JPAs.

40.     Notwithstanding the statements and other records transmitted by Respondents, Petitioner has now received from the Intermediaries and certain of their borrower-clients notices that the Respondents have breached their obligations under the relevant agreements by, *inter alia*, failing to make Participation Payments to one or more of the Nominal Respondents and other payments required under the JPAs.

41.     Upon the receipt of these notices, Petitioner made inquiries to the Respondents regarding the status of Participation Payments. Respondents provided to Petitioner statements of account, documents, records and other representations purporting to show that although untimely, the Respondents were engaged in efforts to fulfill their obligations under the JPAs to make Participation Payments.

42.     Despite the foregoing records, certain Intermediaries and their borrower-clients have now alleged claims against the Respondents sounding in fraud, breach of contract, unjust enrichment, and conversion.

43.     There now exists genuine disputes as to whether (i) Respondents intend to fulfill their obligations to make Participation Payments; (ii) Respondents made promises in the JPAs that were false when made because the Respondents secretly intended not to perform; (iii) the statements of account and other records produced by Respondents regarding their efforts to make Participation Payments were fraudulently prepared in order to induce the Intermediaries and other parties to continue to participate in such transactions; (iv) Respondents have engaged in a

fraudulent scheme to unlawfully convert the Escrow Payments or proceeds derived therefrom; and (v) Respondents liability to the Intermediaries and/or their borrower-clients and/or Petitioner.

44.     At all relevant times the Individual Respondents controlled and directed the activities of the other Respondents in a concerted and coordinated scheme to fraudulently convert the Escrow Payments or proceeds derived therefrom. Respondent Namazbaeva prepared and signed PCAs and JPAs for the purpose of triggering release of Escrow Payments out of the Petitioner's escrow account in New York to accounts designated by Namazbaeva outside the United States, knowing that the Respondents had no intention of fulfilling their obligations.

45.     Respondents Rach and Chakravarty controlled Anderson and the Alter Ego Respondents and transmitted to Petitioner and/or the Intermediaries false statements of accounts and other documents for the purpose of inducing the Intermediaries to continue to engage in the Disputed Financial Transactions.

46.     The Respondents knew or should have known of the falsity of or omissions of material facts from the documents, records and/or statements at the time the Respondents provided and/or made them.

47.     Petitioner was unaware of the falsity of or omissions of material facts in the documents provided by Respondents, reasonably relied on the truthfulness of those documents, and otherwise lacked knowledge of the Respondents' wrongful conduct.

48.     The Respondents' failure to make or to cause to be made the payments required under the JPAs has caused damage to Petitioner including, *inter alia*, the incurrence of expenses, costs, claims, or other losses that resulted from the wrongful activity of the Respondents.

49.    Based on the foregoing, Petitioner has viable claims against the Respondents for fraud, unjust enrichment, conversion, breach of contract, indemnity, conversion, aiding and abetting, and declaratory judgment.

### The Arbitration Agreement Invoked

50.    Each of the Escrow Agreements provide for arbitration of any disputes related to the Disputed Financial Transactions. Paragraph 16 of the Escrow Agreement, dated as of November 12, 2019, is typical and provides as follows:

> 16. Governing Law/Disputes. This agreement shall be interpreted according to and subject to New York Law. The Escrow Parties agree to do their utmost to ensure that any disputes between them are settled equitably and amicably and where possible without resort to arbitration. In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree and any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

51.    With respect to each Disputed Financial Transaction, more than thirty (30) days have elapsed since written notice of the existence of a dispute. During this time, Petitioner has done its utmost to settle the dispute by direct negotiation with the Respondents, the Intermediaries, and their borrower-clients. Nonetheless, Petitioner has been unable to settle the dispute by direct negotiation.

52.    On August 14, 2020, Petitioner invoked the arbitration provisions of the Escrow Agreements by submitting to JAMS International a Request for Arbitration. By letter dated August 20, 2020, JAMS International advised Petitioner that it would commence the arbitration upon receipt of a Court Order compelling respondents to arbitrate the disputes.

53.    Although the arbitration provision does not specify arbitration rules or an arbitral administrator, Petitioner considers it appropriate to designate an institution to provide

administrative services and technical assistance and secretarial assistance to this Arbitration and hereby proposes JAMS International as the registry and administrator for purposes of the arbitration and the JAMS International Rules as the rules which shall govern the arbitration.

54.    Upon information and belief, each of the other signatories to the Escrow Agreements has or is expected to consent to the appoint JAMS International as the registry and administrator for purposes of the arbitration and the application of JAMS International Rules as the rules which shall govern the arbitration.

**The Respondents are Subject to the<br>Arbitration Agreement Invoked**

55.    The Escrow Agreements were executed contemporaneously with the PCAs and JPAs as part of an integrated transaction. Altogether, each of the JPAs, PCAs, and their corresponding Escrow Agreements comprised an integrated transaction.

56.    Accordingly, the arbitration provisions of the Escrow Agreements are incorporated into the PCAs and JPAs executed by the Namazbaeva on behalf of Anderson and, therefore, Namazbaeva and Anderson are bound thereby.

57.    Individual Respondents Rach and Chakravarty are bound because they controlled Anderson and/or the Alter Ego Respondents and expected to receive, directly or indirectly, Escrow Payments, a BI, cash, investments, or other proceeds derived from the Escrow Payments. Individual Respondents Rach and Chakravarty transmitted to Petitioner the executed PCAs and JPAs and other Para. 4(a) Documents necessary to trigger release of the Escrow Payments to the Alter Ego Respondents.

58.    Each of the Respondents had knowledge of the terms of the Escrow Agreements and knew at all relevant times that (i) they were the parties who would provide the Para. 4(a) Documents that would trigger release of the Escrow Payments; and (ii) they would receive

substantially all of the Escrow Payments upon release because in each transaction, at least one of the Alter Ego Respondents were designated as a party who would receive Escrow Payments or the proceeds derived, directly or indirectly, from the Escrow Payments released pursuant to the Escrow Agreements.

59.     By executing the JPAs and PCAs, instructing the escrow agent to transmit funds out of New York to accounts located outside the United States, and causing the release terms of the Escrow Agreements to be triggered, all while having knowledge of the arbitration provision of the Escrow Agreements, each of the Respondents consented to the submission of all disputes to arbitration in New York.

60.     Each of the Respondents are also third-party beneficiaries of the Escrow Agreements or otherwise received direct benefits from the Escrow Agreements, including but not limited to the receipt, possession, custody or control of (i) the Escrow Payments, (ii) the proceeds derived from the Escrow Payments, or (iv) otherwise continue to maintain possession, custody, or control over the profit participations provided for in the JPAs. The Respondents received the foregoing direct benefits to the exclusion of the rights of the other parties.

61.     Each of the Respondents are, therefore, estopped from denying their obligation to arbitrate pursuant to the agreements to arbitrate set forth in the Escrow Agreements.

62.     In addition, each of Anderson and the Alter Ego Respondents are alter egos of one or more of the Individual Respondents.


**Petitioner Has the Requisite Authority to
Seek an Order Compelling Arbitration**

63.     Petitioner possesses the requisite authority to petition this Court for an Order compelling arbitration pursuant to the authority granted to Petitioner in Section 5 of the Escrow Agreements:

> In the event the Escrow Agent shall be uncertain as to his duties or rights under this Agreement, or shall receive any certificate, statement, request, notice, advice, instruction, direction, or other agreement or instrument from any other party with respect to the Escrow Funds which, in the Escrow Agent's reasonable and good faith opinion, is in conflict with any of the provisions of this Agreement, or shall be advised that a dispute has arisen with respect to the Escrow Funds or any part thereof, the Escrow Agent shall be entitled, without liability to any person, to refrain from taking any action other than to keep safely the Escrow Payment until the Escrow Agent shall be directed otherwise in accordance with joint written instructions from the Escrow Parties or an order of a court with jurisdiction over the Escrow Agent. The Escrow Agent shall be under no duty to institute or defend any legal proceedings although *the Escrow Agent may, in his discretion and at the expense of the Escrow Parties as provided in subsections (c) or (d) immediately below, institute or defend such proceedings*.

(emphasis added).

### Jurisdictional Facts

64.     Each of the Escrow Agreements at issue in this action included terms requiring all disputes relating to the Disputed Financial Transactions to be resolved by arbitration in New York City. The designation of New York City as the location where disputes must be resolved constitutes valid and enforceable forum-selection clauses that are enforceable against the Respondents.

65.     At all relevant times, each of the Respondents knew of the terms of the Escrow Agreements requiring all disputes regarding the transaction to be resolved in New York City.

66.     The Respondents' interests in the Disputed Financial Transactions were completely derivative of and directly related to the interests and conduct of the signatories to the Escrow Agreements because (i) Respondents' interests in the Disputed Financial Transactions comprised of their respective interests in receiving Escrow Payments from Petitioner's escrow account located in New York; (ii) release of the Escrow Payments was conditioned upon the submission

by the Respondents of the Para. 4(a) Documents to Petitioner in New York; and, therefore (iii) it was foreseeable that the forum-selection terms of the Escrow Agreements would be enforced against the Respondents.

67.    Accordingly, Respondents are bound by the forum-selection terms of the Escrow Agreements and subject to personal jurisdiction in New York. *See generally Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

68.    The Respondents are also subject to personal jurisdiction in New York pursuant to CPRL 302(a)(1) and (3).

69.    The Escrow Funds, Escrow Payments, and other payment obligations that were the subject of the Disputed Financial Transactions were denominated in U.S. dollars. In light of the widespread acceptance and availability of U.S. dollars, the Respondents could have negotiated with the Intermediaries to select an escrow agent located in a jurisdiction outside the New York for purposes of processing the payments.

70.    Notwithstanding the availability of other jurisdictions in which Respondents could have processed dollar denominated transactions, the Respondents deliberately elected to enter into the Disputed Financial Transactions on terms providing for Escrow Funds to be deposited into and transferred out of a New York escrow account held in Petitioner's name by a financial institution with offices in New York, New York.

71.    Respondents, on a regular and continuous basis, sent, delivered, or otherwise caused to be sent or delivered to Petitioner's offices in New York and others located in New York documents, instruments, wire transfers, negotiable instruments, statements of account and other transaction related communications for the purpose of triggering the release of Escrow Payments from an account in New York to accounts under the control of Respondents.

72.     Respondents' actions in connection with the Disputed Financial Transactions were expressly aimed at the United States and at New York in particular.

73.     By way of the foregoing, each of the Respondents purposefully availed themselves of the privilege of doing business in New York so as to subject themselves to specific jurisdiction within New York consistent with due process requirements of the United States.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that Court enter the following relief:

**(a)**     Finding, declaring, and ordering Respondents, pursuant to 9 U.S.C. § 4, to arbitrate all disputes related to the Disputed Financial Transactions in New York, New York;

**(b)**     Finding, declaring, and ordering that the parties arbitrate their disputes before JAMS International pursuant to the JAMS International Arbitration Rules;

**(c)**     Awarding Petitioner such other and further relief as this Court deems just and proper.

Dated: New York, New York                FELICELLO LAW P.C.
       September 25, 2020

By:   _/s/ Michael James Maloney_
      Michael James Maloney
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Tel. (212) 584-7806
mmaloney@felicellolaw.com

*Attorneys for Petitioner*