UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CKR LAW LLP f/k/a CRONE KLINE RINDE, LLP,<br><br>　　　　　　　Petitioner,<br><br>　　　　v.<br><br>ANDERSON INVESTMENTS INTERNATIONAL, LLC, PARAMOUNT SERVICES LLC a/k/a PARAMOUNT SERVICES LTD., INTECH HOLDINGS (HK) LIMITED a/k/a INTECH INTERNATIONAL GROUP CO. LIMITED a/k/a INTECH HOLDINGS INC., WHITE ROCK ELECTRONIC TRADING LLC, BMR CONSULTING, EDMUND WHITE a/k/a RAVI RACH, GULZHAN NAMAZBAEVA, and SATYABRATO CHAKRAVARTY,<br><br>　　　　　　　Respondents. | Civil Action No. 1:20-cv-7937-JSR<br><br>**<u>DECLARATION OF JEFFREY A. RINDE IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 55(b)(2)</u>** |

　　　　JEFFREY A. RINDE declares, pursuant to 28 U.S.C. 1746, as follows:

　　　　1.　　I am over the age of eighteen and competent to make this declaration. I am the managing partner of petitioner CKR Law LLP ("Petitioner").

　　　　2.　　Respondents in this action are Anderson Investments International, LLC ("Anderson"); Intech Holdings (HK) Limited a/k/a Intech International Group Co. Limited a/k/a Intech Holdings Inc. ("Intech"), White Rock Electronic Trading LLC ("White Rock"), Paramount Services LLC a/k/a Paramount Services Ltd. ("Paramount"), and BMR Consulting ("BMR"); Ravi Rach a/k/a Edmund White ("Rach"), Gulzhan Namazbaeva ("Namazbaeva") and Satyabrato Chakravarty ("Chakravarty" and altogether, the "Respondents").

1

3. This is an action, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), to compel Respondents to arbitrate disputes arising from a series of financing transactions for which Petitioner acted as limited escrow agent.

4. I make this declaration in support of Petitioner's application, pursuant to Fed. R. Civ. P. 55(b)(2), for entry of Judgment in favor of Petitioner, compelling Respondents to arbitrate the disputes alleged in the Petition (Dkt. 1), directing issues of arbitrability to be submitted to the arbitrator, designating the JAMS International Arbitration Rules as the rules that will govern the arbitration, and designating JAMS International as the registrar and administrator of the arbitration.

**Background**

5. Annexed hereto as **Exhibit A** is a true and correct copy of the Petition to Compel Arbitration filed in this action (ECF Dkt. No. 1, the "Petition"). I have read the Petition and hereby verify that the factual allegations therein are true and correct to the best of my knowledge, information, and belief, except as to those matters which are alleged on information and belief, and as to them, I believe those matters to be true.

6. I respectfully refer to the Petition for a more complete recitation of the facts and circumstances supporting Petitioner's request for relief. Unless otherwise stated, all capitalized terms in this Declaration have the meaning assigned to them in the Petition.

7. In summary, Petitioner acted as the Escrow Agent, pursuant to written Escrow Agreements, in connection with the Disputed Financial Transactions alleged in the Petition.

8. As discussed in the other papers accompanying this motion, all Respondents have now been duly served in accordance with the means authorized by the Court in its Memorandum Orders of March 12, 2021 and March 26, 2021 (ECF Dkt. Nos. 37 38, 39, 44, 45). As set forth in my Declaration dated October 19, 2020 (ECF Dkt. No. 27), beginning on October 1, 2020,

Respondent Rach wrote to me directly on the WhatsApp messaging platform, and by way of those messages revealed his actual knowledge of the Petition and Petitioner's claims. (*See* Dkt. No. 27 ¶¶ 50, 51; Dkt. No. 27-10, Ex. J annexed thereto).

### The Escrow Agreements Contain Enforceable Arbitration Provisions

9. Annexed hereto as **Exhibit B** is a compilation of true and correct, redacted copies of the Escrow Agreements that were executed in connection with the Disputed Financial Transactions alleged in paragraphs 26-a to 26-k of the Petition. For ease of reference, the compilation of Escrow Agreements annexed as Exhibit B have been assigned Bates numbers Petitioner-0000001 through 0000098.

10. Paragraph 4(a) of the Escrow Agreement, dated November 12, 2019[1] (Petitioner-0000002), is typical and obligated Petitioner to release Escrow Payments upon the receipt of certain documents, including fully executed agreements (*i.e.*, a Private Contract Agreement (a "PCA" and together with others, the "PCAs") and Joint Participation Agreement (a "JPA" and together with others, the "JPAs")) and confirmation of the issuance of a bank instrument.

11. The November 12, 2019 Escrow Agreement contains the following provisions:

> 16. <u>Governing Law/Disputes</u>. This agreement shall be interpreted according to and subject to New York Law. The Escrow Parties agree to do their utmost to ensure that any disputes between them are settled equitably and amicably and where possible without resort to arbitration. In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree and any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

(Ex. B, at Petitioner-0000007).

---

[1] A copy of this Escrow Agreement was previously filed at Dkt. No. 27-2.

12. Each of the eleven Escrow Agreements annexed hereto as Exhibit B contain nearly identical provisions in which the parties agreed to the application of New York law, the submission of all disputes to binding arbitration, and the designation of the city, county and state of New York as the venue for all disputes. (*See* Petitioner-0000007, 23, 34, 43, 53, 62, 72, 82, 88, 97).

13. Ten of the Escrow Agreements are silent as to the designation of an arbitral authority to act as the registrar and administrator of the arbitration and as to the rules that will apply to the arbitration. Given the international nature of this dispute, Petitioner has proposed that JAMS International be designated as the registrar and administrator and application of JAMS International Rules. The JAMS International Rules are available at https://www.jamsadr.com/international-arbitration-rules/english.

14. One of the Escrow Agreements, (Ex. B, at Petitioner-0000097), provides that the parties shall discuss and agree to the arbitral administrator and applicable rules, but that in the event of a lack of agreement on those issues, the arbitration shall proceed before the American Arbitration Association ("AAA") and under AAA rules. As of the date of this Declaration, I am not aware of any objection by Respondents to the appointment of JAMS International as the registrar and administrator for the arbitration or the application of JAMS International Rules. In any event, Petitioner does not consent to arbitrate before the AAA, or to application of AAA rules, with respect to any of the other Escrow Agreements.

15. As discussed below and elsewhere in the papers submitted in connection with this motion, Respondents' consent to designation of JAMS International and application of the JAMS International rules can be implied by their failure to exercise their right to appear and object to Petitioner's designation of JAMS International and the JAMS International Rules.

**Petitioner Has Alleged Facts Showing a Legal Basis to Compel Respondents to Arbitrate Pursuant to the Arbitration Provisions in the Escrow Agreements**

16. Annexed hereto as **Exhibits C** and **D**[2] are true and correct redacted copies of a JPA and PCA that were submitted by Respondents in connection with the Escrow Agreement dated November 12, 2019 (Petitioner-0000001-0000010). Exhibits C and D were executed by Respondent Namazbaeva on behalf of Respondent Anderson. Exhibits C and D designate accounts held under the name and control of Respondents White Rock and Intech as accounts to which payments or assets are instructed to be transferred in connection with the relevant Disputed Financial Transaction.

17. As alleged in the Petition, Exhibits C and D are typical of the type of JPAs and PCAs submitted by Respondents in order to trigger the release of funds held in escrow pursuant to the Escrow Agreements annexed hereto as Exhibit B. As set forth more fully in the Petition, certain of the other JPAs and PCAs submitted by Respondents designated accounts held under the name and control of Respondents BMR and Paramount as accounts to which payments or assets were instructed to be transferred in connection with the relevant Disputed Financial Transaction. As alleged in the Petition, Respondents Rach, Chakravarty and Namazbaeva controlled the other corporate Respondents.

18. Exhibits C and D, along with the other facts alleged in the Petition, establish that Respondents knew of the Escrow Agreements and their terms and executed the PCAs and JPAs, and submitted confirmation of issuance of a bank instrument, for the express purpose of triggering release of the Escrow Payments. With respect to each of the Disputed Financial Transactions, the Respondents acted together in concert to execute the PCAs and JPAs and provide them to

---

[2] Exhibits C and D were previously filed at Dkt. No. 27-3 and 27-4.

Petitioner, along with confirmation of issuance of a bank instrument, to trigger release of the Escrow Payments from Petitioner's New York trust account. The Respondents received direct benefits from the foregoing actions in the form of funds transferred from the escrow account to the accounts identified by Respondents in the JPAs and/or PCAs.

19. Respondent Rach held himself out as an officer, director and authorized representative of Anderson, Paramount, BMR, and White Rock. Respondent Chakravarty held himself out as an officer, director and authorized representative of Intech. Respondent Rach transmitted to Petitioner the executed PCAs, JPAs, confirmations and other documents necessary to trigger release of the relevant Escrow Payments in connection with the Disputed Financial Transactions. Respondent Chakravarty, through Intech, agreed to receive the bank instrument which Rach arranged to be issued.

20. Following release of certain of the funds from escrow, Petitioner received information that Respondents had begun efforts to make multiple large transfers of amounts of funds sufficient to meet their obligations under most of the JPAs and/or PCAs concerning the Disputed Financial Transactions. From time to time Respondents advised Petitioner that the transfers were delayed because of bank compliance issues. This information was sent to Petitioner to induce it to continue to enter into Escrow Agreements in the belief that the funds purportedly being sent by Respondents were delayed because of ordinary compliance reviews, which, in the experience of Petitioner, can be lengthy with respect to large, international transfers. By late 2019, however, Petitioner became concerned regarding the veracity of certain of the information previously provided by Respondents. As described more fully in the Petition, Petitioner has become aware of disputes relating to the Disputed Financial Transactions.

21. Despite its good faith efforts, however, Petitioner has been unable to resolve the disputes by negotiation. Now, despite the limited role of Petitioner as set forth in the Escrow Agreements, Petitioner has become involved in legal proceedings concerning the Disputed Financial Transactions, which are still pending as of the date of this Declaration. Petitioner is entitled, pursuant to the Escrow Agreements, to indemnification of the costs and expenses it has incurred in connection with those legal proceedings and has legal claims against each of the Respondents. Petitioner alleges that its damages exceed $75,000.00.

22. Accordingly, Petitioner seeks to compel Respondents to arbitrate in New York all disputes concerning the Disputed Financial Transactions in accordance with the arbitration provisions of the Escrow Agreements. Petitioner contends that each of the Respondents knowingly received direct benefits from the Escrow Agreements and, therefore, are equitably estopped from not arbitrating the disputes relating to the Disputed Financial Transactions. In the alternative, Petitioner contends that the Respondents should be compelled to arbitrate pursuant to the other doctrines discussed in the accompanying Memorandum of Law.

23. WHEREFORE, Petitioner respectfully requests that the Court issue Judgment, pursuant to Fed. R. Civ. P. 55(b)(2), in favor of Petitioner, compelling Respondents to arbitrate the disputes alleged in the Petition (Dkt. 1), directing issues of arbitrability to be submitted to the arbitrator, designating the JAMS International Arbitration Rules as the rules that will govern the arbitration, and designating JAMS International as the registrar and administrator of the arbitration.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed on: May 14, 2021

                                                                                                                        _____
                                                                                                                        Jeffrey A. Rinde